UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Richmond Division)

DANIAL J. WILLIAMS,                    :
                                       :
        Petitioner,                    :
                                       :
        v.                             :        Civil Case No. 3:09-cv-00769-RLW
                                       :
HELEN FAHEY,                           :
CHAIR OF THE VIRGINIA                  :
PAROLE BOARD,                          :
                                       :
        Respondent.                    :

PETITIONER'S RESPONSE IN OPPOSITION TO
RESPONDENT'S MOTION TO DISMISS

Of Counsel:                                    Warren T. Allen II
Donald P. Salzman (*Pro hac vice*)             Virginia Bar Number 72691
Julia M. Kazaks (*Pro hac vice*)               *Attorney for Petitioner Danial Williams*
Michael G. Tierney (*Pro hac vice*)            Skadden, Arps, Slate, Meagher & Flom, LLP
Albert A. Starkus III (*Pro hac vice*)         1440 New York Avenue, N.W.
Skadden, Arps, Slate, Meagher & Flom, LLP      Washington, D.C. 20005-2111
1440 New York Avenue, N.W.                     (202) 371-7126
Washington, D.C. 20005-2111                    (202) 661-9121 (fax)
(202) 371-7000                                 wtallen@skadden.com

Danial Williams is absolutely innocent of raping and murdering Michelle Bosko, but he spent twelve years incarcerated for those offenses because his constitutional rights were violated at almost every stage of the criminal justice process.  He is still on parole for these offenses.  Today, instead of acknowledging the manifest injustice of his conviction, Respondent seeks dismissal of Danial Williams' Corrected Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (the "Petition") because Respondent erroneously concludes too much time has passed to remedy these constitutional violations.

As the United States Supreme Court has repeatedly recognized, petitions for habeas corpus relief in the federal courts may proceed years after convictions and despite significant procedural barriers when petitioners present compelling claims of innocence.  *E.g.*, *Schlup v. Delo*, 513 U.S. 298, 319–21 (1995); *House v. Bell*, 547 U.S. 518 (2006); *In Re Troy Davis*, 130 S. Ct. 1 (2009).  Danial Williams' evidence of innocence is stronger than the evidence in those three cases.  Indeed, few cases—if any—present as compelling a claim of actual innocence as his.  Accordingly, for the reasons that follow, Danial Williams' Petition is not barred by the statute of limitations in 28 U.S.C. § 2244(d).

## BACKGROUND

While Omar Ballard, a serial offender, was raping and murdering Michelle Bosko, Danial Williams and his wife Nicole were asleep in their bed.  Both Danial and Nicole Williams told the police they were home together before either knew that the police suspected him.

The Commonwealth based its case against Danial Williams on demonstrably false confessions coercively extracted by Detective Glenn Ford, who had previously secured false confessions from multiple individuals during an unrelated investigation.  During Danial Williams' interrogation, investigating officers 1) falsely claimed someone had seen him coming

out of the victim's apartment after she was last seen alive, 2) falsely told him that he failed a polygraph when he actually passed, 3) raised the prospect that he could be executed, and 4) insisted that DNA would prove his guilt. Eventually, he succumbed to the pressure and provided his coerced confession after nearly nine hours of grueling interrogation. Not surprisingly, the confession's key details did not match the physical evidence of the crime. For example, Danial Williams told police he beat the victim to death with his fists and a shoe when, actually, she was stabbed and strangled. His coerced false confession differed so dramatically from the autopsy findings that the police had to suggest a new version of his statement.

The unreliable false confessions the police extracted from three other defendants suffered from the same fatal flaws. All four defendants' uncorroborated confessions conflicted with each other, were replete with mistakes about crucial details, and contradicted the physical evidence. The police eventually charged seven innocent defendants, four of which—including Danial Williams—had independently corroborated alibis.[1]

DNA evidence, the gold standard of proof, powerfully demonstrates Danial Williams' innocence and conclusively proves Omar Ballard alone raped and killed the victim. Only Ballard's DNA matched the biological evidence collected, including DNA recovered from 1) the victim's vaginal swabs 2) under the victim's fingernails, and 3) semen on a blanket at the scene. (Ex. 1, Certificate of Analysis, May 13, 1999.) Moreover, unlike the coerced confessions police extracted from Danial Williams and the other sailors, Ballard's first two confessions were accurate, they comported with the physical evidence and other information learned during the police investigation, and Ballard revealed information about the crime that only the killer could

---

[1]   As noted in the Petition, Danial Williams, Joseph Dick, Richard Pauley, and John Danser had corroborated alibis. (Pet. ¶ 116.)

know.  (Ex. 2, Statement of Omar Ballard, Mar. 4, 1999; Ex. 3, Statement of Omar Ballard, Mar. 11, 1999.)[2]  Ballard did not know the accused sailors and told the police that he committed the crime by himself.  He testified under oath that Danial Williams and the other charged defendants were not involved in the crime.

Danial Williams' court-appointed defense counsel failed to perform their most basic duties in violation of his constitutional rights.  They ignored Danial Williams' repeated assertions of innocence and did not investigate his case.  Even minimal efforts would have led them to Ballard and substantial exculpatory evidence.  Instead, Danial Williams' lawyers applied intense pressure on him to plead guilty to a crime he repeatedly said he did not commit because they feared he would be convicted and sentenced to death.  Danial Williams immediately sought to withdraw his guilty plea after it became known that the police had finally found a DNA match—from Omar Ballard—and that Ballard had confessed.  The trial court rejected his request, and the Virginia appellate courts affirmed his conviction.

## ARGUMENT

## I.   DANIAL WILIAMS' PETITION IS TIMELY UNDER 28 U.S.C. § 2244(d)

In Danial Williams' case, executive clemency functioned as a type of direct review, and it reset the statute of limitations clock.  Seen in either light, under § 2244(d)(1)(A), the limitations period for Danial Williams' Petition began when then-Governor Kaine reduced his sentence to

---

[2]   Respondent's Brief in Support of Motion to Dismiss ("Respondent's Brief") notes that Ballard implicated other defendants in a third un-sworn, oral statement on one occasion.  (Resp't Br. ¶¶ 57–58.)  Ballard made this third statement solely to secure a plea deal with the Commonwealth that would spare him the death penalty, but he subsequently testified under oath that the statement implicating the other defendants was false.  (Ex. 4, Habeas Hrg. Tr. vol. 1, *Tice v. Johnson*, 05-2067 at 49:1–52:19, Sept. 11, 2006.)

time served on August 6, 2009.  Accordingly, Danial Williams had one year from that date to file a federal habeas corpus petition.

Danial Williams makes a compelling case of actual innocence.[3]  Yet Virginia law did not provide any way to use traditional appellate or post-conviction proceedings to establish his claim on the unusual facts of his case.  Accordingly, Danial Williams was forced to raise his actual innocence claims through the clemency process—the only mechanism available to him.  As a result, for reasons detailed below, his instant claims are timely under § 2244(d)(1).

## A.     Under § 2244(d)(1)(A), Danial Williams Had Until August 5, 2010 to File a Petition for Habeas Corpus

### 1.     Executive Clemency Functioned as Direct Review for Williams

Danial Williams had a single vehicle with which to present his compelling claim of actual innocence: executive clemency.  The three other avenues of relief available to wrongfully incarcerated inmates in the Commonwealth—two writs of actual innocence and state habeas— were not available to him.  The Writ of Actual Innocence Based on Biological Evidence is only applicable in cases where exculpatory DNA evidence is not available to defendants before their convictions become final in the Circuit Court. Va. Code Ann. § 19.2-327.3(A)(iv).  The Writ of Actual Innocence Based on Non-Biological Evidence excludes petitioners who plead guilty. Va. Code Ann. § 19.2-327.10.  In the instant case, Omar Ballard's DNA match came to light after

---

[3]    Danial Williams' Petition provides substantial factual detail in support of his claims and does not rely on "bare assertions"; thus, in ruling on a motion to dismiss, the factual allegations therein must be taken as true.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950–51 (2009); *see also Wolfe v. Johnson*, 565 F.3d 140, 160 (4th Cir. 2009) (noting that when "assessing whether a § 2254 claim has been properly dismissed without an evidentiary hearing or discovery, [a court] must evaluate its underlying allegations pursuant to the principles of Federal Rule of Civil Procedure 12(b)(6)") (citations and quotations omitted); *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (noting that courts must accept as true well-pleaded factual allegations).

4

Danial Williams pled guilty, but before he was sentenced, so neither writ was available to him. Moreover, Virginia courts may not consider actual innocence claims in state habeas proceedings. *Lovitt v. Warden*, 266 Va. 216, 259 (2003). Thus, on these extraordinary and unique facts, clemency operated as direct review.

Danial Williams could only advance his actual innocence claims through a clemency petition; but, from a jail cell, no individual could marshal the necessary evidence in this complicated case. Only with the assistance of clemency counsel was he able to present comprehensive evidence of innocence that gave Governor Kaine grave doubts about his guilt.

Governor Kaine recognized the defendant sailors' confessions were unreliable and uncorroborated. Moreover, crime scene evidence and DNA pointed to a single perpetrator— Omar Ballard. Ballard's violent crime spree and admission that he alone murdered and raped Michelle Bosko further bolstered Danial Williams' petition for clemency. Governor Kaine declined to grant the sailors absolute pardons because he found that the petitioners failed to "conclusively" prove their innocence, a nearly impossible standard that no court has ever required. But he granted significant relief when he conditionally pardoned Danial Williams.

In this particular case, because Danial Williams learned of exculpatory DNA evidence after his plea, but before his sentencing, Virginia's statutory scheme for handling innocence claims effectively transformed executive clemency into Danial Williams' "direct review." Under § 2244(d)(1)(A), the limitations period begins on "the date on which the judgment became final by the conclusion of direct review," so he had until August 5, 2010 to file a habeas petition.

It is important to consider the "entire statutory scheme" of federal habeas relief in construing § 2244. *Malcolm v. Payne*, 281 F.3d 951, 957 (9th Cir. 2002). That statutory scheme indicates Congress knew how to limit avenues of review if it chose to do so. For example, in

§ 2244(c), Congress used the formulation "on an appeal or review *by a writ of certiorari*"
(emphasis added).  Similarly, in § 2253(a), Congress wrote, "the final order shall be subject to
review, on appeal, *by the court of appeals for the circuit*" (emphasis added).  Thus, Congress'
failure to narrowly circumscribe the term "direct review" in § 2244(d)(1)(A) stands in marked
contrast to surrounding provisions and indicates the legislature contemplated something other
than appellate court action may qualify.[4]

    This view of clemency comports with the Supreme Court's recent decision in *Harbison v.
Bell*, 129 S. Ct. 1481 (2009).  In *Harbison*, the Court concluded that federally-appointed post-
conviction counsel may assist petitioners in state clemency proceedings.  *Id.* at 1487–88, 1491.
The Court observed that "[t]he Government's arguments. . . are laced with the suggestion that
Congress simply would not have intended to fund clemency counsel for indigent state prisoners
because clemency proceedings are a matter of grace entirely distinct from judicial proceedings."
*Id.* at 1490.  The Court flatly rejected such a claim: "Far from regarding clemency as a matter of
mercy alone, we have called it 'the "fail safe" in our criminal justice system.'"  *Id.* (quoting
*Herrera v. Collins*, 506 U.S. 390, 415 (1993)).[5]

    Once an executive exercises clemency power, the action is integrated into future judicial
proceedings.  *Lewis v. Commonwealth*, 218 Va. 31, 38 (1977) (noting that the effect of
commutation of a death sentence to life imprisonment was as if the substitute life sentence was

---

[4]   *Cf. Russello v. United States*, 464 U.S. 16, 23 (1983) (noting, "[w]here Congress includes
particular language in one section of a statute but omits it in another section of the same Act,
it is generally presumed that Congress acts intentionally and purposely in the disparate
inclusion or exclusion") (citations and quotations omitted).

[5]   The Supreme Court has described § 2244(d)(1)(A) in terms of court review.  S*ee Jimenez v.
Quarterman*, 129 S. Ct. 681, 685–86 (2009).  However, neither the Supreme Court nor the
Fourth Circuit has evaluated whether it allows clemency to be a form of "direct review."

the original sentence imposed); *see also Bowen v. State*, 488 S.W.2d 373, 376 (Tenn. 1972) (holding that "after the order of the governor commuting the sentence to ninety-nine years, the judgment of conviction and the sentence then stood as if it had been the verdict and judgment pronounced in the first instance"); *People v. Morris*, 219 Ill.2d 373 (2006) (holding that a governor's partial pardon commuting the death penalty precluded the state from seeking to reinstate it during a subsequent retrial).

The principles announced in these opinions suggest that under the unique circumstances of the instant case, executive clemency served as Danial Williams' "direct review" under § 2244(d)(1)(A), and the limitations period began August 6, 2009, when that review concluded.

### 2.    The Governor's Clemency Action Revived Petitioner's Claims

Even if the Court concludes that clemency is not Danial Williams' direct review, his claims are still timely under § 2244(d)(1)(A) because Governor Kaine's grant of a conditional pardon reset the one-year limitations period.  State action that re-opens a previously final judgment starts a new one-year period under § 2244(d)(1)(A).  *Jimenez*, 129 S. Ct. at 685–86; *see also Frasch v. Peguese*, 414 F.3d 518, 522–23 (4th Cir. 2005) (holding that allowing a petitioner a belated appeal ten years after his conviction became final re-started the limitations period under § 2244(d)(1)(A)).

Ultimately, Governor Kaine concluded that Danial Williams and the other wrongly convicted sailors "raised substantial doubts about their convictions and the propriety of their continued detention."  Press Release, Timothy Kaine, Governor, the Commonwealth of Virginia (Aug. 6, 2009).  He reduced Danial Williams' sentence to time served—an action that well fits the Seventh Circuit's holding that executive clemency is "an extension of the sentencing process."  *Lucien v. Preiner*, 967 F.2d 1166, 1167 (7th Cir. 1992); *see also Harmelin v. Michigan*, 501 U.S. 957, 1008 (1991) (noting clemency is a flexible technique that can be used to

7

lighten a sentence).  Even where all other parts of a judgment are final, sentence review is an

ongoing action that extends the § 2244(d)(1)(A) period.[6]  Governor Kaine's action on August 6,

2009 was part of the sentencing process and re-started the one-year limitations period.  *See*

*Jimenez*, 129 S. Ct. at 686.

### B.    Danial Williams' Inability to Discover the Factual Predicate of His Claims Extended the Limitations Period, and the Statute of Limitations Was Tolled While His Clemency Petition Was Pending

#### 1.    Danial Williams Needed Competent Counsel to Establish His Claims

Danial Williams was unable to discover the factual predicate of his claims until at least

the middle of 2005, when habeas counsel had a chance to review the record of his case.  Under

§ 2244(d)(1)(D), the limitations period begins when the factual predicate for the claim could

have been discovered with reasonable diligence.  A petitioner's mere knowledge of some

operative facts regarding his claims is insufficient to start the statute of limitations.  *Moore v.*

*Knight*, 368 F.3d 936, 939 (7th Cir. 2004).  A petitioner must be able to link those facts in a

manner that supports a habeas corpus claim.  *Id.*  Also, the requirement of diligence is flexible—

petitioners who are incarcerated are limited in their ability to investigate facts.  *Id.* at 939–40.

Here, the facts underlying Danial Williams' habeas claims, including his actual

innocence claim, lay scattered throughout records of a multi-year criminal investigation, the

court records (including three complete jury trials) of eight defendants charged with raping and

---

[6]    *See Cook v. Corpening*, No. 1:08CV166-MU-02, 2008 WL 1840778, at *3 (W.D.N.C. Apr. 23, 2008) (holding that the "one-year limitations calculations . . . run from the date that . . . convictions and sentence became final after re-sentencing, not from the date on which . . . original convictions . . . became final"); *United States v. Dodson*, 291 F.3d 268, 276 (4th Cir. 2002) (interpreting § 2255 statute of limitations as commencing after re-sentencing following remand by Circuit Court); *see also Lewis v. Maine*, 254 F. Supp. 2d 159, 164–165 (D. Me. 2003) (applying *Dodson* analysis to § 2244 to find petition timely after appellate remand concerning restitution issue).

murdering Michelle Bosko, and evidence gathered by investigators and multiple teams of

clemency counsel for defendants.[7]   Danial Williams could not reasonably be expected to

investigate this material from a jail cell without assistance.   This is particularly true regarding

evidence which was withheld in violation of his constitutional rights.   (*See* Pet. ¶ 77, pgs. 72–73);

*Lewis v. United States*, 985 F. Supp. 654, 657 (S.D.W. Va. 1997) (construing a similar provision

of § 2255 and noting suppression of evidence affects when evidence becomes available).

Respondent argues that the factual basis for the Petition's actual innocence claim were

known "at the time of the crimes."   (Resp't Br. 13.)   That argument proves too much.   It is

always the case that the facts regarding who committed a crime spring into existence at the

moment the crime is committed.   At a minimum, innocent defendants know, with certainty from

the very beginning, that they did not commit the crimes with which they are charged.   But the

statute contemplates defendants developing factual predicates for their claims, to wit, some

judicially cognizable evidence of their innocence.   It took some time for Danial Williams to be

able to discover such facts and the constitutional violations that resulted in his wrongful

incarceration.   (*See* Pet. 6, 69–74 (noting constitutional violations).)[8]

---

[7]   The evidence gathered by attorneys and investigators included, *inter alia*, opinions from the nation's leading experts in police interrogation/false confessions, crime scene reconstruction, violent crime analysis, forensic pathology, and sophisticated DNA analysis.  A small sample of the material obtained is included as Exhibits 5–10 to Petitioner's Response in Opposition to Respondent's Motion to Dismiss to rebut material contained in the exhibits to Respondent's Brief.  Counsel understands such exhibits and declarations do not count against the twenty-page limit under Local Civil Rule 7(F)(3) (excluding affidavits and supporting documentation from the page count) and *Tafas v. Dudas*, 511 F. Supp. 2d 652, 663 (E.D. Va. 2007) (interpreting the Local Rule 7(F)(3) to permit such exhibits, provided they do not contain "significant arguments" that do not appear in the brief).

[8]   Danial Williams' Petition includes a number of constitutionally based claims.  His entire application for habeas relief is timely if even one of the claims described therein is timely.  *Walker v Crosby*, 341 F.3d 1240, 1245 (11th Cir. 2003); *Johnson v. Sec'y, Dep't of Corr.*, No. 8:09-CV-2065-T-27TGW, 2009 WL 3486024, at *5–6 (M.D. Fla. Oct. 28, 2009).  Thus, to

*(cont'd)*

To illustrate, before he pled guilty, Danial Williams did not know about Omar Ballard's DNA match, about Ballard's confession that he committed the crime by himself, or that Ballard was the person preying upon victims in the area near the victim's apartment shortly before and after her murder.  Similarly, until he obtained clemency counsel, Danial Williams was not able to develop reports from crime scene reconstruction, forensic pathology, and police interrogation/false confession experts demonstrating that Ballard alone committed this rape and murder.  (*See* Exs. 5–10.)  In addition, the corroboration for Joseph Dick's alibi did not come to light until 2005.  (Pet. 116.)

As a practical matter, ineffective assistance of counsel made it impossible for Danial Williams to discover the bases of his habeas claims.  *See Green v. Johnson*, No. CIVA 2:05CV340, 2006 WL 3746138, at *17 (E.D. Va. Dec. 15, 2006) (noting ineffective assistance of counsel can affect the determination of when incarcerated petitioners should have discovered factual predicates underlying claims).  Trial counsel failed to investigate an alternative perpetrator, signaled to Danial Williams that his attempts prove his innocence were hopeless, and ignored the evidence Danial Williams gave them that pointed to the real killer. (Pet. ¶¶ 16, 18, 28.)  Appellate counsel provided no greater assistance, asserting only a single ground for relief, failing to argue any constitutional violations, and failing to inform Danial Williams that he could pursue state habeas relief to remedy the constitutional violations in his case.  (Pet. ¶ 43.)[9]  Under these conditions, with his previous attempts to develop his claims

_____
*(cont'd from previous page)*
prevail on its Motion to Dismiss, Respondent must counter and prevail against every asserted basis for relief in Danial Williams' Petition.

[9]   The Commonwealth is correct, however, that Danial Williams' appellate counsel did file an appeal with the Virginia Supreme Court raising the same single issue, and that appeal was subsequently denied.

stifled by ineffective counsel, Danial Williams could not have been expected to discover a factual basis until he had effective counsel, and said counsel had had an opportunity to become familiar with his case. *McFarland v. Scott,* 512 U.S. 849, 858 (1994) ("the right to counsel necessarily includes a right for that counsel meaningfully to research and present a defendant's habeas claims."). Accordingly, it was not until July 2005 that the statute of limitations would have began running in Danial Williams' case.[10] But, as discussed below, the limitations period was statutorily tolled while his clemency petition was pending.

2.    The Period of the Clemency Proceeding is Statutorily Tolled

State review of Danial Williams' conviction tolls the limitations period under § 2244(d)(2). Respondent disagrees and relies on *Malcolm v. Payne.* (Resp't Br. 16–17 (citing

---

[10]   Danial Williams faced an additional unconstitutional impediment to filing his petition: As discussed above, Virginia law provided only one venue for Williams to raise his actual innocence claim—executive clemency. Several justices of the Supreme Court have noted that closing the courthouse door to claims of actual innocence may be unconstitutional. *See In Re Troy Davis*, 130 S. Ct. at 1–2 (Stevens, J., concurring) (citing *Triestman v. United States*, 124 F.3d 361 (2nd Cir. 1997)). Under § 2244(d)(1)(B), if state action in violation of federal law creates an impediment to filing a federal habeas petition, the one-year period of limitations does not begin to run until after the impediment has been removed. *Accord, Hill v. Braxton*, 277 F.3d 701, 706–07 (4th Cir. 2002). By this rationale, Virginia's statutory scheme unconstitutionally impeded Danial Williams' ability to file a habeas corpus petition in this case. This case is distinguishable from *Minter v. Beck*, 230 F.3d 663 (4th Cir. 2000). In *Minter*, petitioner argued that unfavorable state court decisions were an unconstitutional impediment to habeas relief because a federal court would have followed the state court decisions. 230 F.3d at 666. In that case, however, petitioner at least had a way to raise that claim: filing suit and challenging the precedent. In the words of the Minter Court, "the effort itself was still possible." *Id.* Here, however, Virginia's law countenanced no proceeding that would allow Danial Williams to raise his claim. Virginia law therefore made it impossible for him to make "the effort itself."

Moreover, ineffective assistance of counsel on direct appeal qualifies as an unconstitutional impediment under § 2244(d)(1)(B). *Green*, 2006 WL 3746138, at *16. See also *Green v. Johnson*, 2007 WL 951686, *6 (E.D. Va. Mar. 26, 2007) (adopting Magistrate Judge's reasoning on this point); *Green*, 515 F.3d at 303, 304-05 (4th Cir. 2008) (holding that the district court committed "no error" in its conclusion). As described *infra* at note 16, Danial Williams' ineffective counsel presented such an impediment.

*Malcolm*, 281 F.3d at 957 for the proposition that clemency petitions do not toll the limitations

period).)  But *Malcolm* is premised on a view of clemency that conflicts with a recent ruling by

the Supreme Court.  *See Harbison*, 129 S. Ct. at 1490–91.

Respondent argues clemency is a matter "directed to and acted upon by the state's

executive branch wholly separate from the state judiciary, its judgments, and its appellate review

process."  (Resp't Br. ¶ 39 (quoting *Malcom*, 281 F.3d at 960).)  *Harbison*, however, challenges

this view: "[F]ar from regarding clemency as a matter of mercy alone, we have called it 'the "fail

safe" in our criminal justice system.'"  *Harbison*, 129 S. Ct. at 1490 (quoting *Herrera*, 506 U.S.

at 415).  Indeed, clemency may "impugn, displace, or discredit a judicial finding of guilt."

*Snyder v. City of Alexandria*, 870 F. Supp. 672, 681 (E.D. Va. 1994).

The Ninth Circuit reasoned that the statute of limitations "must be read in context with"

exhaustion requirements and concluded that limiting § 2244(d)(2) to court proceedings served

that goal because it guaranteed state courts an opportunity to address petitioners' concerns.

*Malcolm*, 281 F.3d at 959.  Here, however, Virginia did not provide any state court remedy

through which Danial Williams could exhaust his actual innocence claims.  Instead, under

Virginia law, only the governor could hear Danial Williams' claim of actual innocence.[11]

Legislative history also suggests Congress intended "other collateral review"—which

tolls the limitations period under § 2244(d)(2)—to include clemency proceedings.  *Sperling v.*

---

[11]  Moreover, § 2254's exhaustion requirement contemplates that a petitioner may be required to
exhaust claims by other means than an appeals court.  One exhaustion requirement,
§ 2254(b)(1)(A), only involves exhausting "the remedies available *in the courts of the State*."
(emphasis added).  But § 2254(b)(1)(B) contains an alternate way when "there is an absence
of *available State corrective process*."  This formulation indicates that Congress meant a
petitioner might have a way to exhaust a claim by appealing to an "available State corrective
process" that is different from "the courts of the State."  Especially in the wake of *Harbison*,
the "available process" would appear to be clemency, the traditional "fail safe" of the system.

*White,* 30 F. Supp. 2d 1246, 1251 (C.D. Cal. 1998); *see also Lopez v. Johnson*, 1999 U.S. Dist.

LEXIS 23295, 11–12 (N.D. Tex. Mar. 4, 1999) (accord).  In *Sperling*, the court noted that

Senator Hatch—one of the statute's chief architects—remarked that cases would pass through

several levels of review before becoming final.  *Sperling,* 30 F. Supp. 2d at 1251.  Senator Hatch

included clemency in the remarks at issue.[12]  141 Cong. Rec. 7825–26 (June 7, 1995).

Senator Hatch's remarks comport with the Supreme Court's view in *Harbison*: far from being

unrelated, clemency is an integral part of the review process.  Thus, the legislative history

confirms that under the unique procedural posture of this case, the statute of limitations was

tolled while executive clemency proceedings were ongoing.[13]

## II.   THE STATUTE OF LIMITATIONS SHOULD BE EQUITABLY TOLLED BECAUSE EXTRAORDINARY CIRCUMSTANCES EXISTED AND A MISCARRIAGE OF JUSTICE OCCURRED

Two distinct types of equitable tolling are available to habeas corpus petitioners.[14]  First,

tolling is allowed when a petitioner shows that extraordinary circumstances beyond his control

prevented him filing, though he exercised reasonable diligence.  *Green,* 515 F.3d at 304 (internal

---

[12]   Senator Hatch's remarks were as follows:

> [A]nd  at least in collateral cases, as a general rule, the Governor also has ruled on the case because there has been a petition for clemency; and the [Governor] has also reviewed the claim in a clemency petition and has denied it, too. At this point, the prisoner's conviction has been proved beyond a reasonable doubt.  It has been upheld on direct and State collateral review.

141 Cong. Rec. 7825–26.  *But see Malcolm*, 281 F.3d at 962 (refusing to credit the legislative record because court concluded the statute is not ambiguous).

[13]   This period is December 7, 2005 to August 6, 2009.  As discussed in Section II.B below, if the Court determines that this time is not statutorily tolled, it should be equitably tolled instead.

[14]   Respondent questions whether this court may grant equitable tolling of § 2244(d) and notes that the Supreme Court is currently reviewing the issue; but it remains the law of this Circuit that equitable tolling is available.  *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000).

citation omitted).  Second, tolling is available when a petitioner shows that a miscarriage of justice has occurred to one who is actually innocent.  *See Souter v. Jones*, 395 F.3d 577, 588 (6th Cir. 2005).  Danial Williams's Petition is entitled to both kinds of equitable tolling.

A.  **Virginia's Restrictions on Actual Innocence Claims Amounted to Extraordinary Circumstances Warranting Equitable Tolling in This Case**.

In order to merit tolling under the extraordinary circumstances theory, "a habeas petitioner must show that 1) he has pursued his rights diligently and 2) some 'extraordinary circumstance' prevented him from filing in a timely manner." *Green*, 515 F.3d at 304. Virginia's statutory scheme dictating that Danial Williams could present an actual innocence petition in only one fashion was such a circumstance.

An unusual state statutory regime may form the basis for equitable tolling. *In re Wilson*, 442 F.3d 872, 875–76 (5th Cir. 2006) (Texas law limiting habeas filings served as "extraordinary circumstance").  In the case at hand, Virginia's legal system confining Danial Williams' recourse only to clemency was beyond his control.  Under the circumstances, Danial Williams also proceeded with appropriate diligence.  He initially professed his innocence, urged his attorneys to find supporting evidence, and supplied good leads.  But his counsel failed to follow up, and then pressured him into pleading guilty through mockery and the threat of execution.[15] Therefore, under the principles of equitable tolling, the Court should find that the Petition, filed only four months after the Governor's final action on the clemency petition, is timely.[16]

---

[15]  It also appears trial counsel attempted to dissuade Danial Williams from withdrawing his guilty plea.  Trial counsel told the court that Danial Williams "believes his innocence [and] . . . wishes to basically take his chances with a jury. . . . [co-counsel] and I obviously, have had lengthy discussions with him, but this is his decision and his choice.  He understands the potential consequences."  (Resp't Ex. F, Tr. at 5:1–8 Apr. 28, 1999.)

[16]  While garden variety miscalculation is generally not a basis for equitable tolling, outright ineffective assistance of counsel on direct review can be such a basis: "when attorney error

*(cont'd)*

**B.     The Petition is Timely Because a Miscarriage of Justice Has Occurred**

1.     The Statute of Limitations Is Tolled Due to a Miscarriage of Justice

The Supreme Court "has consistently relied on the equitable nature of habeas corpus to preclude application of strict rules" that enforce finality of state criminal convictions at the expense of habeas petitioners. *Schlup v. Delo*, 513 U.S. 298, 319 (1995). Examining the history of these gate-keeping, finality-based rules, the Court noted that courts retain the equitable power to avoid them with a "miscarriage of justice" exception. *Id.* at 317–21. The reasoning of *Schlup* controls here as a second rationale for equitable tolling.

Traditionally, there were few, if any, gate-keeping requirements that limited habeas petitioners on the basis of finality. Courts took up very old habeas petitions where facts were sufficient to permit decisions. As the Fourth Circuit explained, a lapse of twenty-four years was "no bar to federal habeas relief to correct jurisdictional and constitutional trial errors." *Hairston v. Cox*, 459 F.2d 1382, 1386 (4th Cir. 1972) (citations and quotations omitted); *see also Day v. McDonough*, 547 U.S. 198, 215 (2006) (Scalia, J., dissenting) (listing similar pre-AEDPA cases).

Courts and Congress later worked together to impose a series of rules to promote finality. *See, e.g.*, *McClesky v. Zant*, 499 U.S 467, 490–91 (1991) (procedural default and abuse of the writ); *Spalding v. Aiken*, 460 U.S. 1093, 1095–96 (1983) (Burger, C.J., concurring) (calling for increased strength to a then-existing habeas laches rule and analogizing to *res judicata*). Each rule had a "miscarriage of justice" exception. *McClesky*, 499 U.S. at 494; *Spalding*, 460 U.S. at

---

*(cont'd from previous page)*

amounts to constitutionally ineffective assistance of counsel, it may provide the cause necessary to excuse a procedural default." *Mackall v. Angelone*, 131 F.3d 442, 446 (4th Cir. 1997). Here, Danial Williams' attorneys' fundamentally flawed representation not only was an unconstitutional impediment as described *supra* at note 10, but also should move the beginning period for the statute of limitations to the middle of 2005, when habeas counsel became familiar with the case. And, under § 2244(d)(2), the period in which clemency proceedings were ongoing should also be tolled.

1097–98.[17]  Congressional enactments regarding these rules did not remove the power of the federal courts to enforce "court-announced [equitable] principles" such as the miscarriage of justice exception.  *McClesky*, 499 U.S. at 487; *Schlup*, 513 U.S. at 319.  As the Court noted in *Schlup*, this was particularly true where Congress said nothing about courts' equitable powers. *Id.* at 320 (discussing *Kuhlmann v. Wilson*, 477 U.S. 436 (1986)).

Because § 2244 is not a jurisdictional bar under the AEDPA—which says nothing about how to apply the traditional equitable exceptions to its new statute of limitations—courts' equitable powers survive.  *Harris v. Hutchinson*, 209 F.3d 325, 328–29 (4th Cir. 2000); *Souter v. Jones*, 395 F.3d 577, 589 (6th Cir. 2005).  At least two courts have recognized that this power specifically includes the ability to enforce a miscarriage of justice exception.  *Souter*, 395 F.3d at 589; *Lisker v. Knowles*, 463 F. Supp. 2d 1008, 1035–36 (C.D. Cal. 2006).  One other court of appeals has likewise agreed that actual innocence may toll the statute of limitations.  *See Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000).

Other courts have divided on the issue for two reasons.  First, they have not been presented with sufficiently compelling cases of actual innocence.  *See Lisker*, 463 F. Supp. 2d at 1032–33.  In the absence of such a compelling claim, the courts of appeal have split.  One hinted that it would endorse an innocence-based exception on a sufficiently compelling showing, while three have repeatedly refused to decide the question.[18]  Another initially expressed disapproval,

---

[17]   The Court has noted the serious interests in finality must sometimes give way when an innocent person would otherwise be barred from relief.  *Schlup*, 319 U.S. at 319–20; *Calderon v. Thompson*, 523 U.S. 538, 557 (1988) (finality interest may be outweighed where a petitioner makes a strong showing of actual innocence).

[18]   *Compare Majoy v. Roe*, 296 F.3d 770, 775 (9th Cir. 2002) (suggesting support for a innocence exception) *with Doe v. Menefee*, 391 F.3d 147, 160 (2d Cir. 2004) (refusing to decide); *Sibley v. Cullivser*, 377 1196, 1205 (11th Cir. 2004) (accord); *Flanders v. Graves*, 299 974, 976–78 (8th Cir. 2002) (accord).

but later refused to decide the issue in the absence of a compelling innocence claim.[19]  Second,
other Courts of Appeal have rejected the claim because they do not appear to have considered the
historical roots of the miscarriage of justice exception or the Supreme Court's pronouncements
that such power is not lost in the face of Congressional silence.[20]

Placed in its proper historical context, however, and in the light of Danial Williams'
compelling claim of actual innocence, it is clear that this Court should invoke the miscarriage of
justice principle of equitable tolling.

2.   <u>Danial Williams Suffered a Miscarriage of Justice</u>

Respondent apparently concedes that should the Court recognize an exception to
§ 2244(d) based on actual innocence, the traditional *Schlup* standard would apply.  (Resp't
Br. 23.)  Under that standard, Danial Williams must show that "a constitutional violation has
probably resulted in the conviction of one who is actually innocent."  *Sharpe v. Bell*, 593 F.3d
372, 377 (4th Cir. 2010) (quotations omitted).  This determination assesses "all the evidence, old
and new, incriminating and exculpatory, without regard to whether it would necessarily be
admitted . . . at trial."  *Id.* at 377–78 (quoting *House*, 547 U.S. at 538).  At this stage, however,
not all facts carry the same weight.  Respondent has moved to dismiss, and the ordinary
standards of Federal Rule of Civil Procedure 12(b) apply: each of Petitioner's factual assertions

---

[19]  *Compare Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000) *with Prince v. Thaler*, No. 07-51496, 2009 WL 3806077 at *1 (5th Cir. Nov. 13, 2009).  The *Felder* court noted that the petitioner had not sufficiently shown actual innocence.  *Felder*, 204 F.3d at 171 n.8.

[20]  *Escamilla v. Jungwirth*, 426 F.3d 868, 871–72 (7th Cir. 2005); *David v. Hall*, 318 F.3d 343, 346–48 (1st Cir. 2003).  For example, in *Escamilla*, the Seventh Circuit appears to have assessed whether it was possible to extend the AEDPA's actual innocence standard (found only in cases of successive petitions under § 2244(b)) to cover § 2244(d).  426 F.3d at 871–72.  The court did not appear to consider that there was a pre-existing equitable power to toll the statute for a miscarriage of justice, or that § 2244(b) was a departure from this standard.

17

must be taken as true. *Walker v. Kelly*, 589 F.3d 127, 138–39 (4th Cir. 2009); *see also* note 3, *supra*. The Court may consider certain materials outside the pleadings, but it must accept the truth of Danial Williams' presentation of the facts related to his innocence, which are far more than bare assertions. *Id.*; *Townes v. Jarvis*, 577 F.3d 543, 550 (4th Cir. 2009).

Viewed under the *Schlup* standard, Danial Williams' Petition presents a compelling showing of actual innocence matched by few, if any, other cases. As noted in the Petition, every key piece of scientific evidence conclusively indicates that a single perpetrator committed this crime. (Pet. 3–4.) The evidence is irrefutable: semen found inside the victim matches blood found under her fingernails, and both of those samples come from one man, Omar Ballard. *Id.* Omar Ballard confessed to the crime, and admitted repeatedly that he acted alone. *Id.* at 5. As this Court has concluded, the State's purported evidence tying the four convicted sailors to this crime, absent their confessions, "was not sufficient to extinguish a reasonable juror's doubts." *Tice v. Johnson*, No. 3:08cv69, slip. op. at 37 (E.D. Va. Sept. 14, 2009). Moreover, the verified alibis of Richard Pauley and John Danser (Pet. ¶¶ 68, 75)—which this Court noted were "largely uncontroverted" by the Commonwealth, even when subjected to adversarial testing— undermined the Commonwealth's theory of the crime. *Tice v. Johnson*, slip. op. at 39–40. Danial Williams' unreliable and coerced confession, which stands at odds with the physical evidence and statements of his purported accomplices, does not change that analysis. *Id.* at 3–4.

Unfortunately, intervening constitutional violations prevented a jury from ever hearing the weaknesses of the Commonwealth's case and the compelling evidence in Danial Williams' favor. His attorneys failed to conduct an adequate investigation of the crime, even when he provided them with valuable leads. (Pet. 69); *Cf. United States v. Mooney*, 497 F.3d 397, 404– 06 (4th Cir. 2007) (holding that a defendant was prejudiced by attorney's ineffective assistance,

due, in part, to lack of research).  Instead, his attorneys simply assumed Danial Williams' guilt and pressured him into pleading guilty.  (Pet. 4.)  Given his compelling claims of actual innocence, Danial Williams suffered a grave miscarriage of justice.

## III.   SERIOUS CONSTITUTIONAL QUESTIONS WOULD BE RAISED IF PETITIONER'S CLAIMS WERE FOUND TO BE TIME-BARRED

Applying the statute of limitations to bar Danial Williams' claims would mark an extraordinarily rare event: the refusal by a federal court to perform any habeas review on a first-time habeas petition asserting a compelling claim of innocence, both as an independent ground of relief and as reason for excusing a gate-keeping requirement in order to hear meritorious constitutional claims.  Denying either would raise troubling constitutional concerns.

The Fourth Circuit has cautioned against summarily dismissing habeas petitions that raise colorable actual innocence claims.  In *Wolfe v. Johnson*, 565 F.3d 140 (4th Cir. 2009), the court reversed, in part, a dismissal of a habeas petition and remanded the case for consideration of an actual innocence claim: "Of importance, a § 2254 petitioner is entitled to have a *Schlup* actual innocence issue addressed and disposed of in the district court."  *Id.* at 164 (citations omitted).

Moreover, serious constitutional concerns also present themselves if a federal court refuses to weigh the substance of compelling showings of actual innocence.  Regarding freestanding claims of actual innocence, three justices of the Supreme Court have indicated that § 2244(d) may be unconstitutional if read to bar such claims.[21]  Constitutional problems are just as acute if federal courts cannot use their traditional equitable powers to avoid § 2244 where

---

[21]   *See In Re Troy Davis*, 130 S. Ct. 1, 1-2 (2009).  *Accord, Triestman v. United States*, 124 F.3d 361 (2d Cir. 1997) (noting that an AEDPA bar to federal habeas review could violate Suspension Clause of Article 1, Section 9 and the Due Process Clause of the Fifth Amendment); *In re Dorsainvil*, 119 F.3d 245 (3d. Cir. 1997); *see also Swain v. Pressley*, 430 U.S. 372 (1977) (Suspension Clause implicated if collateral remedy is inadequate or ineffective to test legality of petitioner's detention).

miscarriages of justice have occurred.[22]  Danial Williams, backed by scientific evidence and the confession of the real perpetrator, has a compelling case of actual innocence.  In order to avoid the real and substantial constitutional problems if this compelling proof can never be presented to a federal court, the proper course is to deny Respondent's Motion to Dismiss and proceed to the merits of Danial Williams' claims.

## CONCLUSION

For the reasons stated above, Petitioner respectfully requests that this Court deny Respondent's Motion to Dismiss.

This 23rd day of April

Respectfully submitted

/s/_____
Warren T. Allen II
Virginia Bar Number 72691
*Attorney for Petitioner Danial Williams*
Skadden, Arps, Slate, Meagher & Flom, LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005-2111
(202) 371-7126
(202) 661-9121 (fax)
wtallen@skadden.com

Of Counsel:
Donald P. Salzman (*Pro hac vice*)
Julia M. Kazaks (*Pro hac vice*)
Albert A. Starkus III (*Pro hac vice*)
Michael G. Tierney (*Pro hac vice*)
Skadden, Arps, Slate, Meagher & Flom, LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005-2111
(202) 371-7000

---

[22]  *Whitley v. Senkowski*, 317 F.3d 223 (2d Cir. 2003); *Drach v. Bruce*, 305 Fed. Appx. 514 (10th Cir. 2008); *Wyzykowski v. Dep't of Corr.*, 226 F.3d 1213, 1218 (11th Cir. 2000); *Lisker*, 463 F. Supp. 2d at 1037-38.

**Certificate of Service**

I hereby certify that on April 23, 2010 I will electronically file the foregoing with the

Clerk of the Court using the CM/ECF system which will then send a notification of such filing

(NEF) to the following:

        Virginia B. Theisen
        Senior Assistant Attorney General
        Office of the Attorney General
        900 East Main Street
        Richmond, VA 23219
        vtheisen@oag.state.va.us

        *Counsel for Respondent*


|     April 23, 2010     |      /S/      |
|---|---|
| Of Counsel: | Warren T. Allen II |
| Donald P. Salzman (*Pro hac vice*) | Virginia Bar Number 72691 |
| Julia M. Kazaks (*Pro hac vice*) | *Attorney for Plaintiff Danial Williams* |
| Albert A. Starkus III (*Pro hac vice*) | Skadden, Arps, Slate, Meagher & Flom, LLP |
| Michael G. Tierney (*Pro hac vice*) | 1440 New York Avenue, N.W. |
| Skadden, Arps, Slate, Meagher & Flom, LLP | Washington, D.C. 20005-2111 |
| 1440 New York Avenue, N.W. | (202) 371-7126 |
| Washington, D.C. 20005-2111 | (202) 661-9121 (fax) |
| (202) 371-7000 | wtallen@skadden.com |