IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DANIAL WILLIAMS,

      Petitioner,

v.                                           Civil Action No. 3:09CV769

HELEN FAHEY,

      Respondent.

## MEMORANDUM OPINION

Danial Williams, a Virginia probationer with counsel, brings this petition for a writ of habeas corpus challenging his convictions in the Circuit Court for the City of Norfolk ("the Circuit Court") for the murder and rape of Michelle Bosko. On December 7, 2009, Williams filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 with the Court.[1] The matter is before the Court on Respondent's Motion to Dismiss and Williams's Motion to Stay and Hold Federal Habeas Corpus Remedies in Abeyance Pending Exhaustion of State Court Remedies ("Motion to Stay"). For the reasons that follow, the Court will grant the Motion to Stay and hold the § 2254 Petition in abeyance pending exhaustion of state court remedies. Respondent's motion to dismiss will be denied without prejudice.

## I. PERTINENT FACTUAL AND PROCEDURAL BACKGROUND

"On July 8, 1997, William Bosko returned to his home in Norfolk from a Navy cruise. He found his wife, Michelle Bosko (hereinafter 'Michelle'), murdered in the bedroom of their

---

[1] On December 7, 2009, Williams filed a 28 U.S.C. § 2254 petition with the Court. Pursuant to the Order of the Court, on January 29, 2010, Williams filed a Corrected § 2254 Petition. (Docket No. 12). The Court will refer to the Corrected § 2254 Petition as the § 2254 Petition.

apartment." *Tice v. Johnson*, 3:08cv69, 2009 WL 2947380, at *1 (E.D. Va. 2009). The police

investigation quickly focused on Danial Williams, who was a neighbor of the Boskos. *Id.* "On

July 9, 1997, after questioning by the police, Williams confessed to raping and stabbing

Michelle. Williams's statement indicated that he acted alone in raping and murdering Michelle."

*Id.* On November 17, 1997, Williams unsuccessfully sought to suppress his confession. (§ 2254

Pet. 8.) On January 22, 1999, Williams pleaded guilty to the murder and rape of Michelle.

(Resp't's Br. Supp. Mot. Dismiss Ex. A.) The Circuit Court sentenced Williams to two terms of

life imprisonment. (*Id.*)

"[A]lthough the police progressively obtained confessions from four men who admitted

to committing the crimes against Michelle Bosko, the confessions repeatedly failed to square

with each other or the biological evidence recovered from the victim's person. Eventually, five

men were convicted with respect to crimes against Michelle Bosko: Derek Tice, Danial

Williams, Joseph Dick, Eric Wilson, and Omar Ballard." *Tice*, 2009 WL 2947380, at *1.

Because of a continuing lack of certainty that any of these men besides Ballard participated in the

rape and murder of Michelle Bosko, on August 6, 2009, then-Governor Timothy Kaine

commuted the sentences of Tice, Williams, and Dick. (§ 2254 Pet. 6.)[2] On September 14, 2009,

this Federal District Court found that Tice was entitled to federal habeas relief with respect to his

convictions for the rape and murder of Michelle. *Tice*, 2009 WL 2947380, at *1. The Court

---

[2] Wilson had completed his prison term and was released from prison in 2006. (§ 2254
Pet. 6.)

found that counsel was deficient for failing to move to suppress Tice's confession on the ground that such confession was made after Tice had invoked his right to remain silent. *Id.* at *1. The Court concluded that, with the exclusion of Tice's confession, "the prosecution's case against Tice would be left awash in doubt." *Id.* at *22.[3]

On December 7, 2009, Williams initiated his federal habeas proceeding in this Court. In his § 2254 Petition, Williams alleges, *inter alia*, that he is actually innocent, that his confession to the police was false, and that his attorneys failed to properly prepare for and present evidence in support of his motion to suppress the inculpatory statement he gave to the police. (§ 2254 Pet. 67–68, 70.) In support of his claims Williams alleges counsel "failed to present substantial evidence, of which they were aware, about the coercive interrogation tactics that the police used during Danial Williams'[s] interrogation that demonstrated that his will had been overborne and that his confession was involuntary." (*Id.* at 70.) Additionally, Williams asserts that although counsel

> knew of [Detective] Ford's background of obtaining false confessions and specifically his involvement in the notorious Lafayette Grill case, Danial

---

[3] In finding that Tice had demonstrated prejudice, the Court concluded:

> There was no physical evidence linking Tice to the crimes or suggesting that Tice acted in concert with the individuals who had committed the crimes. Indeed, the physical evidence tended to refute the theory that the rape and murder had been committed by multiple individuals. Although the prosecution alleged that eight men had crowded into the bedroom to rape Michelle, and then took turns stabbing her, there was remarkably little sign of such violent activity by so many men in such a confined space. Furthermore, the wounds to Michelle did not indicate that she had been the victim of serial stabbing by seven or eight different individuals. Additionally, while multiple DNA deposits were found at the crime scene, they were traced only to one individual, Omar Ballard.

*Tice*, 2009 WL 2947380, at *22.

Williams'[s] lawyers never sought to introduce evidence of Ford's history at the motions hearing. They failed to call Ford, who was present and available to testify, as a witness at the hearing even though Ford was the key detective who extracted Danial's confession.

(*Id.*)

On April 9, 2010, Respondent moved to dismiss the § 2254 Petition on the grounds that it was barred by the relevant one-year statute of limitations. *See* 28 U.S.C. § 2244(d). Williams responded to that motion.

On June 29, 2010, Williams filed his Motion to Stay. Williams represented that:

[Detective] Ford was indicted on May 7, 2010 for lying to federal agents, judges, and state and federal prosecutors. Ford's indictment, along with newly-discovered evidence that surfaced in the wake of the indictment, demonstrates that he perverted the criminal justice system for his own ends. When combined with his record in the Bosko investigation, the new evidence gives rise to a new claim for relief: that Ford violated Danial Williams'[s] Due Process rights by pursuing a conviction against a man he knew to be innocent. The Court should stay this proceeding and hold it in abeyance until Danial Williams is able to pursue this new claim in the Virginia courts.

(Mem. Supp. Mot. Stay 1–2.)[4] For ease of reference, the Court will refer to these allegations as the "New Claim." Williams further asserts:

Counsel for Danial Williams have developed additional information since Detective Ford's indictment, which was not available earlier, that supports Petitioner's claim that Detective Ford manipulated the prosecution and twisted

---

[4] In that indictment, Ford was charged with: conspiracy to commit extortion under color of official right, in violation of 18 U.S.C. § 1951 (Count One); extortion under color of official right, in violation of 18 U.S.C. § 1951 (Counts Two through Four); and making false statements, in violation of 18 U.S.C. § 1001(a)(2) (Count Five). *United States v. Ford*, 2:10cr00083-JBF-FBS (E.D. Va. Indictment filed May 7, 2010). The charges involved allegations that, in exchange for money, Ford falsely represented to state and federal officials that he had received substantial assistance in criminal investigations from defendants. *Id.* On October 27, 2010, Ford was convicted of Counts One, Two, and Five. *Id.* (E.D. Va. Jury Verdict Form filed Oct. 27, 2010). The parties do not suggest that the federal criminal charges against Ford involved misconduct in the prosecution of the Bosko rape and murder.

evidence, knowing that Danial Williams was innocent, in order to protect his own career. In the interests of protecting confidentiality and out of concern for witness retaliation, Petitioner is prepared to provide this new information to the Court for in camera review if the Court or Commonwealth so requests.

(*Id.* at 4.) Williams attached to his Motion to Stay a copy of the petition for a writ of habeas corpus that he filed in the Circuit Court on June 29, 2009. Respondent has objected to the Motion to Stay. Williams has filed a reply. In his reply, Williams clarifies the distinction between the New Claim and the due process claim contained in his current § 2254 Petition as follows:

> At bottom, the due process claim contained in the federal petition pending before this Court alleges a *negligent or reckless wrongful prosecution.* In contrast, Danial Williams'[s] new due process claim is completely independent in character, scope, and severity: It alleges a *deliberate, intentional, and corrupt prosecution* by Ford of men he knew or suspected were innocent in order to protect his own career.

(Williams Reply 5.)

## II. GOVERNING PRINCIPLES FOR STAY AND ABEYANCE

Prior to the passage of the Antiterrorism and Effective Death Penalty Act (AEDPA), it was well established "that federal district courts may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims." *Rhines v. Weber,* 544 U.S. 269, 273 (2005) (*citing Rose v. Lundy,* 455 U.S. 509 (1982)). Such a rule was driven by the doctrine of comity, which "'teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.'" *Id.* at 274 (additional internal quotation marks omitted) (*quoting Lundy,* 455 U.S. at 518)). Therefore, the Supreme Court imposed a "'total exhaustion'" requirement, and "directed federal courts to

5

effectuate that requirement by dismissing mixed petitions without prejudice and allowing

petitioners to return to state court to present the unexhausted claims to that court in the first

instance." *Id.* (*quoting Lundy*, 455 U.S. at 522). "*Lundy* 'contemplated that the prisoner could

return to federal court after the requisite exhaustion.'" *Id.* (*quoting Slack v. McDaniel*, 529 U.S.

473, 486 (2000)).

In *Rhines*, the Supreme Court acknowledged that AEDPA's one-year statute of

limitations and the total exhaustion requirement could unfairly disadvantage some habeas

petitioners. *Id.* at 275. Specifically, "[a]s a result of the interplay between AEDPA's 1-year

statute of limitations and *Lundy's* dismissal requirement, petitioners who come to federal court

with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of

their unexhausted claims," if a court simply dismisses the petition without prejudice. *Id.* In

order to address this problem, the Supreme Court approved a stay-and-abeyance procedure,

wherein the district court stays the federal habeas petition and "hold[s] it in abeyance while the

petitioner returns to state court to exhaust his previously unexhausted claims." *Id.*

The Supreme Court emphasized that a court's discretion in employing the stay and

abeyance procedure "must . . . be compatible with [the] AEDPA's purposes. *Id.* at 276. In this

regard, the Supreme Court emphasized the AEDPA "twin purposes," *id.* at 277: (1) "to 'reduce

delays in the execution of state and federal criminal sentences, particularly in capital cases'" *id.*

at 275 (*quoting Woodford v. Garceau*, 538 U.S. 202, 206 (2003)); and (2) to "streamlin[e] federal

habeas proceedings by [encouraging] a petitioner[] . . . to exhaust all his claims in state court

prior to filing his federal petition." *Id.* at 277 (*citing Duncan v. Walker*, 533 U.S. 167, 180

(2001)).

Although "stay and abeyance should be available only in limited circumstances," *id.*, the

Supreme Court concluded:

> it likely would be an abuse of discretion for a district court to deny a stay and to
> dismiss a mixed petition if [(1)] the petitioner had good cause for his failure to
> exhaust, [(2)] his unexhausted claims are potentially meritorious, and [(3)] there is
> no indication that the petitioner engaged in intentionally dilatory litigation tactics.
> In such circumstances, the district court should stay, rather than dismiss, the mixed
> petition.

*Id.* at 278. Under such circumstances, "the petitioner's interest in obtaining federal review of his

claims outweighs the competing interests in finality and speedy resolution of federal petitions."

*Id.*

### III. ANALYSIS

The Court notes that, at this juncture, Williams has not amended his § 2254 Petition to

include his New Claim. Therefore, the current § 2254 Petition technically is not a "mixed

petition." *Rhines v. Weber*, 544 U.S. 269, 273 (2005) (*citing Rose v. Lundy*, 455 U.S. 509

(1982)).[5] Nevertheless, it is implicit in Williams's submissions that he intends to amend the

§ 2254 Petition to add the New Claim if the Court concludes that Stay and Abeyance is

appropriate.[6] Given the lack of an objection to this omission by Respondent, and Respondent's

agreement that *Rhines* still governs whether stay and abeyance is appropriate, the Court will

proceed to analyze the Williams's motion under the framework set forth in *Rhines*. Nevertheless,

---

[5] It is unclear why Williams has not moved to amend his § 2254 Petition to include his
New Claim.

[6] If Williams had amended his § 2254 Petition to include the New Claim, and the Court
then determined that stay and abeyance was not appropriate, the Court would be obliged to offer
Williams the option of again amending the habeas petition to delete the New Claim. *Rhines*, 544
U.S. at 278 (*citing Rose*, 455 U.S. at 520).

Williams will be required to move promptly to amend his § 2254 Petition or show good cause for his failure to do so.

Prior to addressing the specific factors set forth in *Rhines*, the unusual posture of this case warrants a brief comment. First, because the former governor has commuted Williams's active prison term, Virginia's interest in the speedy execution of its criminal sentences is at a particularly low ebb. *See id.* at 277 (*quoting Woodford v. Garceau*, 538 U.S. 202, 206 (2003)). Second, because Williams already is litigating his New Claim before the Circuit Court, the doctrine of comity suggests that this Federal District Court should refrain from any undue analysis of the merits of the New Claim. *See id.* at 274 (*quoting Lundy*, 455 U.S. at 518)).

## A.     Williams Has Stated Good Cause.

Under the first factor, the Court must determine whether "there was good cause for the petitioner's failure to exhaust his claims first in state court." *Id.* at 277. The Supreme Court's limited comments on what constitutes good cause to warrant stay and abeyance do not indicate that the standard is meant to be inordinately demanding. *See Pace v. Diguglielmo*, 544 U.S. 408, 416 (2005) (observing that a "petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court" (*citing Rhines*, 544 U.S. at 278)); *Rhines*, 544 U.S. at 279 (Stevens, J., concurring) (concluding "good cause for failing to exhaust state remedies more promptly is not intended to impose the sort of strict and inflexible requirement that would trap the unwary *pro se* prisoner" (internal quotation marks and citation omitted)). Furthermore, numerous courts have concluded the recent discovery of new evidence to support a claim constitutes good cause. *See Cueto v. McNeil*, No. 08-22655-CIV, 2010 WL 1258065, at *15 (S.D. Fla. Mar. 12, 2010) (citing cases); *United States ex rel.*

*Strong v. Hulick*, 530 F. Supp. 2d 1034, 1043 (N.D. Ill. 2008).[7] Respondent does not take issue

with the notion that newly discovered evidence can constitute good cause. Rather, Respondent

challenges Williams's assertion that Ford's indictment constitutes new evidence to support a

claim distinct from any claim previously available to Williams.

The Court disagrees that, prior to the indictment of Ford, Williams could have exhausted

the factual underpinnings of his New Claim. "The exhaustion doctrine is not satisfied where a

federal habeas petitioner presents evidence which was not presented to the state court and which

places his case 'in a significantly different and stronger evidentiary posture than it was when the

state courts considered it.'" *Wise v. Warden, Md. Penitentiary*, 839 F.2d 1030, 1034 (4th Cir.

1988) (*quoting Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983)). Prior to Ford's indictment,

Williams could only speculate as to any corruption or intentional misconduct on the part of Ford.

*Fairchild v. Workman*, 579 F.3d 1134, 1149 (10th Cir. 2009) ("A claim is more than a mere

theory on which a court could grant relief; a claim must have a factual basis, and an adjudication

of that claim requires an evaluation of that factual basis." (internal quotation marks and citation

omitted)). Ford's proven misconduct in manipulating the justice system for his own ends places

Williams's due process claim "'in a significantly different and stronger evidentiary posture'"

than it was prior to the initiation of the criminal proceedings against Ford. *Wise*, 839 F.2d at

---

[7] Indeed, the Commonwealth of Virginia has previously agreed that stay and abeyance is the appropriate remedy where new evidence supports an unexhausted claim, but statute of limitations concerns could bar that claim if the Court dismissed the federal habeas petition as unexhausted. Joint Motion For Stay, *Boyce v. Braxton*, 3:05cv558-JRS (E.D. Va. filed Nov. 15, 2005).

1034 (*quoting Brown*, 701 F.2d at 495).[8] Accordingly, the Court finds that Williams has demonstrated good cause for not exhausting his New Claim prior to the initiation of the federal habeas proceedings.

### B. Williams's New Claim Is Potentially Meritorious.

Ford's recent convictions lend factual heft to Williams's claim that Ford manipulated the investigation and prosecution of the crimes against Michelle Bosko to cover Ford's misconduct and to further Ford's corrupt purposes. *See Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997). Such allegations, if proven, could potentially entitle Williams to habeas relief. *See Ferrara v. United States*, 456 F.3d 278, 290–98 (1st Cir. 2006); *see also Rhines*, 544 U.S. at 277 (requiring only that the unexhausted claim not be "plainly meritless" (*citing* 28 U.S.C. § 2254(b)(2))).

Nevertheless, Respondent asserts stay and abeyance would be a useless exercise because the Virginia courts will find Williams's state habeas petition barred by section 8.01-654(A)(2) of the Virginia Code. That statute provides, in pertinent part, "A habeas corpus petition attacking a criminal conviction or sentence, except . . . for cases in which a death sentence has been imposed, shall be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later." Va. Code. Ann. § 8.01-654(A)(2) (West 2011).

---

[8] The parties have not addressed in detail the particular strain of due process implicated by the New Claim. *Gray v. Netherland*, 99 F.3d 158, 162 (4th Cir. 1996) ("When the appeal is to a constitutional guarantee as broad as due process, it is incumbent upon a habeas petitioner to refer to the particular analysis developed in cases and not just to due process in general in order to present his claim." (internal quotation marks omitted)). If there were any suggestion that Williams had engaged in dilatory litigation tactics, the Court would be inclined to require Williams to define more clearly the legal parameters of his New Claim.

10

However, interpretation of that statute does not appear to be as straightforward as Respondent suggests. The Supreme Court of Virginia has observed, "The statute contains no exception allowing a petition to be filed after the expiration of these limitations periods." *Hines v. Kuplinski*, 591 S.E.2d 692, 693 (Va. 2004). In *Hines*, the petitioner asserted that, if applied to him, section 8.01-654(A)(2) of the Virginia Code "violates the bar against suspension of the writ of habeas corpus, Art. I, § 9 of the Constitution of Virginia, because he was not able to discover the basis for his claims of ineffective assistance of counsel within the time period provided for filing a petition." *Id.* Ultimately, the Supreme Court of Virginia declined to reach that issue because it concluded the petitioner could not prove the "predicate for his claimed right to a late filed petition: that he was unable to discover the basis for his claims of ineffective assistance of counsel within the period provided by Code § 8.01-654(A)(2)." *Id.* Thus, *Hines* does not conclusively decide the issue of whether Virginia courts will ultimately find Williams's New Claim barred by the state statute of limitations.

Moreover, Respondent acknowledges that at least one circuit court has overlooked the state statute of limitations in the case of newly discovered evidence. (Resp't's Br. Supp. Obj. Mot. Stay 9 n.6.) Furthermore, nothing before the Court suggests that the Circuit Court has applied what Respondent characterizes as a straightforward bar to dismiss Williams's state habeas petition in the more than six months his state habeas petition has been pending. The ultimate uncertainty of the application of the state statute of limitations in this instance undercuts Respondent's argument that pursuit of state habeas would be futile. *See Howard v. Norris*, 616 F.3d 799, 801 (8th Cir. 2010) ("'If a federal court is unsure whether a claim would be rejected by the state courts, the habeas proceeding should be . . . stayed while the claim is fairly presented to them.'" (omission in original) (*quoting Sloan v. Delo*, 54 F.3d 1371, 1381 (8th Cir. 1995))).

11

**C.    No Indication Exists that Williams Engaged in Intentionally Dilatory Litigation Tactics with Respect to the New Claim.**

Williams filed his state habeas petition within two months after Ford's indictment was unsealed. No indication exists that Williams is seeking to delay his federal habeas proceeding in order to gain some advantage.

## IV. CONCLUSION AND FURTHER PROCEEDINGS

In light of the foregoing factors, Williams's "interest in obtaining federal review of his claims outweighs the competing interests in finality and speedy resolution of federal petitions." *Rhines v. Weber*, 544 U.S. 269, 278 (2005).[9] Accordingly, Williams's Motion to Stay (Docket No. 24) will be GRANTED. Respondent's Motion to Dismiss (Docket No. 19) will be DENIED WITHOUT PREJUDICE. Within twenty (20) days of the date of entry hereof, Williams is DIRECTED to either move to amend his § 2254 Petition to add his New Claim or show good cause for his failure to do so. The present action will be STAYED AND HELD IN ABEYANCE pending resolution of Williams's state habeas petition and any collateral appeal to the Supreme Court of Virginia (collectively "the state habeas proceedings").

Williams shall FILE with the Court a report every ninety (90) days regarding the status of the state court proceedings. Williams shall promptly notify the Court upon the conclusion of the state court proceedings and be prepared to file any additional amended petition, in accordance

---

[9] The Court's exercise of discretion in staying and holding in abeyance the federal habeas proceeding is not intended to address the distinct question of which, if any, of Williams's claims are barred by the statute of limitations under 28 U.S.C. § 2244(d). *See Escamilla v. Jungwirth*, 426 F.3d 868, 869–72 (7th Cir. 2005). In *Escamilla*, the district court stayed the § 2254 petition to permit the petitioner to exhaust his new claims, and then ultimately dismissed all of the claims as barred by the statute of limitations. *Id.*

with the Court's instructions, within thirty (30) days of the conclusion of the state court

proceedings.

An appropriate Order shall issue.


Dated: 6/14/11
Richmond, Virginia

/s/
John A. Gibney, Jr.
United States District Judge